IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


DANIEL KEVIN SCHMIDT,

      Petitioner,

v.                                                              CASE NO. 5:04-cv-00095-RS-AK

JAMES MCDONOUGH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, filed by

Dan Schmidt.  Respondent has filed his response, Doc. 66, and Petitioner has filed his reply.

Doc. 81.  This cause is therefore in a posture for decision.  Having carefully considered the

matter, the Court recommends that the petition be denied.

## BACKGROUND

      In May, 1994, Petitioner was charged with one count of robbery of Betty Lee and/or City

Drugs.  Doc. 3, Ex. A.[1]  Thereafter, Petitioner's court-appointed attorney, Robert A. Pell filed a

motion to suppress.  Doc. 3, Ex. B.  In the motion, Mr. Pell sought the suppression of the

following:  (1) all photographs taken of Petitioner, all photographic lineups which included

---

      [1]Petitioner's method of numbering his exhibits is cumbersome and confusing, and
therefore, the Court has attempted to formulate a more manageable system of reference
beginning with the document number assigned to each volume of exhibits by the Clerk and then,
rather than using Roman numerals, assigning exhibit letters.

Petitioner, (2) all witness identifications made in response to a photographic lineup, pursuant to a

live show up, and pursuant to a live lineup, (3) all statements made by Petitioner, and (4) any

"subsequent in court identification of [Petitioner] by any witness." *Id*.  As grounds for the

motion, counsel stated:

> The initial traffic stop...was illegal in that it was not based upon reasonable
> suspicion or any other legal theory.  All subsequent evidence was obtained as a
> result of the illegal stop....
>
> The photo lineups were unduly suggestive and without indicia of sufficient
> reliability....
>
> The personal lineups were conducted without counsel present and were again
> unduly suggestive and without indicia of sufficient reliability....
>
> The arrest warrant...was insufficient on its face and not based upon probable
> cause.  The subsequent arrest and detention of the defendant are therefore illegal
> and all evidence obtained subsequent to that arrest must be suppressed.

*Id*.  Two weeks later counsel personally served a lengthy supporting memorandum on the

prosecutor.  Doc. 3, Ex. C.  While Mr. Pell apparently believed he had filed the memorandum as

well, *see* Doc. 12, Ex. A at 8-9, the memorandum was not actually filed until March 12, 1996,

over a year after trial proceedings concluded.  *See* Doc. 3, Ex. C.

On December 8, 1994, the court held a lengthy hearing on the motion to suppress.  Doc.

3, Ex. D.  The court took extensive testimony and then heard counsel's arguments.  *Id*. at 119-33.

At that time, the State conceded the unconstitutionality of the in-person line up, *id*. at 127, and

the court took the remaining matters under advisement.  Subsequently, the court summarily

denied the motion without further discussion and without recognizing the State's concession.

Doc. 3, Ex. E.

The case proceeded to trial, Docs. 12-14, with Petitioner testifying in his own defense.

Doc. 14, Ex. A at 3-32.  The jury found Petitioner guilty as charged.  Doc. 14, Ex. B.

Shortly before sentencing, the State filed a notice of potential habitual offender status,

Doc. 4, Ex. A, and Petitioner's counsel moved for a new trial.  Doc. 14, Ex. C.  As grounds for

the motion, counsel stated:

> The evidence as developed showed that several witnesses saw a white male
> running from City Drug on Harrison Avenue at the time of the alleged robbery.
> Varying descriptions of the suspect were given.  Only one witness, Mona Hood,
> saw a suspect enter a vehicle, described by her as not new, but not more than
> three or four years old, Camaro or Firebird.  She gave a tag number of OPY 0J3.
>
> From this description, the police dispatcher, through no discernable logic,
> randomly came up with the tag number of PYJ 03Y.  This tag, completely
> different from that given by a witness at the scene, and registered to a 1975
> automobile was the only connection of the defendant to the crime.  Essentially,
> the police simply picked the defendant out of mid-air.  Later, the only witness at
> the scene who observed the fleeing automobile confirmed <u>positively</u> that the
> defendant's car was not the one she saw.
>
> If the car leaving the scene is the only connection to the defendant and that car
> was not the defendant's, then the odds of the defendant being the perpetrator are
> astronomical.  The court would have to believe (as the jury did) that the police
> randomly picked out someone from off the street and got the right guy.  It simply
> flies in the face of all common sense.
>
> The defense theory is bolstered by the witnesses' tentativeness in their
> identification of the perpetrator at the time, or shortly after the crime.  Betty Lee,
> the clerk who stood two feet from the defendant could not identify him as the
> perpetrator on the day of the robbery.  She was still unsure enough five days later
> to refuse to put an "X" where she was to identify the defendant.  She could only
> say "I think it's #5."
>
> Ms. Carpenter and Ms. Cahill had only seconds to view the suspect.  Both were
> tentative when identifying the photo in the lineup, yet both were positive at trial.
> Only Ms. Loiry seemed positive from the beginning and she originally gave a
> description very different from the defendant.
>
> * * *
>
> The legal errors of the court in allowing consideration of evidence that should

      have been excluded are set forth in the defendant's motion to suppress and are incorporated by reference into this motion.

*Id*.

A sentencing hearing was held on February 22, 1995.  Doc. 4, Ex. B.  At that time, Petitioner made a motion for substitution of counsel and a 3.600 motion for new trial "and to raise an ineffective assistance of trial counsel claim under 3.600."  *Id*. at 6.  After allowing Petitioner an opportunity personally to argue his motion, the court denied the motion for substitution of counsel.  *Id*. at 16.  The court then denied counsel's motion for new trial.  *Id*. at 27-28.  As to Petitioner's habitual offender status, Mr. Pell stated that he "was at a...slight disadvantage" because he had only received the presentence investigation that morning, and thus, he had not "delved into" the particulars of Petitioner's convictions, and he and Petitioner were "disagreeing as to the application of the habitual offender statute."  *Id*. at 32.  The court concluded that after considering the score sheet and all the evidence presented, Petitioner was an habitual felony offender.  *Id*. at 35-35.  After hearing counsel's final arguments and Petitioner's continued assertions of innocence, the court sentenced Petitioner to twenty-five years imprisonment as an habitual felony offender.  *Id*. at 40; *see also* Doc. 4, Ex. C & D.

Petitioner appealed, and while the appeal was pending, he filed a *pro se* motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800, specifically challenging his designation as an habitual felony offender.  Doc. 4, Ex. E.  Petitioner's court-appointed appellate counsel then filed a motion asking the court of appeal to relinquish jurisdiction so that the trial court could consider the 3.800 motion based on his agreement with Petitioner that the prior convictions used as qualifying offenses for habitualization were not in fact "qualifying offenses" under Florida

law.  Doc. 4, Ex. F.   The court of appeal granted the motion and relinquished jurisdiction for a period of forty days.  Doc. 4, Ex. G.  The State opposed Petitioner's motion on the ground that Rule 3.800 was not the proper vehicle for challenging his sentence.  Doc. 4, Ex. H.

The court held a hearing on the motion and appointed stand-by counsel to assist Petitioner.  Doc. 4, Ex. I at 2.  After determining that the matter was appropriate for consideration under Rule 3.800, the court heard the parties' arguments on the merits of the motion.  *Id*. at 19-46.  It then denied the motion.  *Id*. at 46-47; see also Doc. 4, Ex. K.

The case then returned to the appellate court for consideration of Petitioner's allegations of error.  In that regard, Petitioner raised two challenges to his conviction–the court erred in denying the motion to suppress and the State committed fundamental error in closing argument regarding the burden of proof–and one challenge to his habitual offender sentence.  Doc. 15, Ex. A.  In *Schmidt v. State*, 676 So.2d 27 (Fla. Dist. Ct. App. 1996), the court affirmed the conviction but vacated the sentence and remanded with directions, stating:

> Having carefully reviewed the two issues upon which the challenge to his conviction is based, we conclude that they merit neither discussion nor reversal.
>
> * * *
>
> Because the record before us contains neither evidence establishing that appellant qualifies as an habitual felony offender nor findings of fact to support the imposition of such a sentence, we are unable intelligently to assess the merit of appellant's claim.  Accordingly, we are constrained to vacate appellant's sentence, and to remand for resentencing.  On remand, the trial court may again sentence appellant as an habitual felony offender, provided that the record evidence is legally sufficient to support such a sentence.  However, should it elect to do so,

the trial court is directed to make sufficient findings of fact to permit appellate review of its decision.

*Schmidt*, 676 So.2d at 28-9.  The State's petition for rehearing was denied.  Doc. 15, Ex. E & G.

In response to the remand, the trial court pointed out that in deciding Petitioner's 3.800 motion, it had already held a hearing on the issue and made the appropriate findings of fact: "Given that a full hearing was held with the full participation of the Defendant, which resulted in correcting what the appellate court found deficient in the original proceeding, the court now enters this Order, with attachments, in compliance with the remand for resentencing."  Doc. 22, Ex. A.  With that said, the court adjudicated Petitioner an habitual felony offender.  *Id*.

Petitioner, through counsel, then moved to enforce the mandate or, alternatively, to expedite appeal, based on the court's failure to conduct a *de novo* sentencing hearing.  Doc. 22, Ex. B.  The court of appeal denied the motion without opinion.  Doc. 22, Ex. C.

Petitioner then appealed the order re-adjudicating him an habitual felony offender.  The court of appeal affirmed without written opinion.  Doc. 22, Ex. H & I.

Petitioner then filed a second *pro se* motion for Rule 3.800 relief attacking his habitualization and requesting a de novo resentencing hearing.  Doc. 66, Ex. A at 1-10.  The court denied the motion, Doc. 66, Ex. A, and Petitioner appealed the ruling, which was affirmed without written opinion.  Doc. 66, Ex. D & E.

While the appeal was pending on the 3.800 ruling, Petitioner filed a motion for post-conviction relief pursuant to 3.850, with supporting memorandum.  Doc. 16.  In his motion, he raised twenty grounds for ineffective assistance of counsel and one due process/equal protection claim.  Doc. 16, Ex. A.  After the State responded, the court set the matter for evidentiary

hearing on Grounds 4, 6, 9, and 10 and denied all other grounds for relief.  Doc. 5, Ex. H.  The

court later reset the matter for evidentiary hearing, stating the grounds for hearing as:

Petitioner's "allegations that counsel failed to call David Hurd, that counsel failed to impeach the

witness, that counsel abandoned the agreed to strategy of mistaken identity and the failure of

counsel to call various witnesses to support the defense of mistaken identity."  Doc. 7, Ex. E.

The court held an evidentiary hearing, Doc. 7, Ex. O, and afterward, it denied the remaining

grounds for relief.  Doc. 7, Ex. P.

Petitioner appealed this ruling, and while the appeal was pending, he filed yet another

Rule 3.800 motion to correct illegal sentence.  Doc. 7, Ex. Q.  The court denied the motion,

finding that Petitioner's presence at the resentencing was not required.  Doc. 7, Ex. V.  Petitioner

appealed that ruling as well, and the appeals were consolidated for briefing.  Doc. 8, Ex. D.

Petitioner's appeals were unsuccessful, Doc. 8, Ex. G, and his motion for rehearing was

also denied.  Doc. 8, Ex. H-J.

The instant petition was filed April 14, 2004.  Doc. 1.  In his petition, Petitioner raises

nine claims of ineffective assistance of trial counsel, a claim that the trial court violated his due

process rights when it failed to conduct a new sentencing hearing and that the appellate court

refused to enforce its own order, and a claim that resentencing counsel was ineffective for failing

to raise that Petitioner did not qualify as an habitual felony offender.  *Id*. at 13-27.[2]

---

[2]Petitioner also raised a claim that appellate counsel was ineffective, but he voluntarily
dismissed that claim.  Doc. 23.

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id.* at 1254-55.

I.      Ineffective assistance of trial counsel.

Petitioner raises nine claims that his trial counsel, Mr. Pell, was ineffective. Consequently, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would

restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d

1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to

divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.

"No lawyer can be expected to have considered all of the ways [to provide effective assistance]."

*Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable
> courses of defense (that the lawyer did not think of at all) existed and that the
> lawyer's pursuit of course A was not a deliberate choice between course A,
> course B, and so on. The lawyer's strategy was course A. And [the Court's]
> inquiry is limited to whether this strategy, that is, course A, might have been a
> reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable

conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*,

466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A

"reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the

proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions

set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the

best lawyers would have done or even what most good lawyers would have done, but rather

whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.

*Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

      A.     Failure properly to raise Fourth Amendment claim that Petitioner was improperly targeted and stopped by random selection.

In this claim, Petitioner charges that the police dispatcher admitted at trial "that she utilized random selection to target Petitioner for this crime." Doc. 1 at 13. According to Petitioner, if counsel had properly raised this issue in the motion to suppress and filed the supporting memorandum of law, the court "would have been constitutionally required to suppress all evidence flowing from the illegal target and stop of his vehicle...." *Id.*

This claim was presented to the state court, and therefore, its ruling is entitled to deference unless it was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. Having carefully considered the matter, the state court's denial of this claim does not reach that standard. Mr. Pell did raise this argument repeatedly during the suppression hearing–and again, at trial--and the court took extensive testimony regarding the officers' and dispatcher's actions. Counsel cross-examined the witnesses regarding the manner in which the police connected Petitioner's car and tag number with the description and numbers given by the witnesses at the scene of the robbery, and in the end, the testimony established that Petitioner was stopped based on the "description of the car, the white male in it, and the possible tag configuration. It was...close or similar." Doc. 3, Ex. D at 14-15. There was nothing else counsel could have done or argued to convince the court that Petitioner was improperly stopped. Even if there were alternative arguments which could have been made, the Court is constrained to consider counsel's actions without the benefit of hindsight, assessing his performance only from the vantage point of what falls "within the wide range of reasonably professional

assistance." *Strickland*, 466 U.S. at 689-90.  Counsel's performance plainly meets that standard and thus was deficient.

While counsel did not "file" the supporting memorandum at the time he filed the motion to suppress, there is no evidence that the court did not timely receive and consider the memorandum in making its ruling or that it denied the motion to suppress merely because counsel failed to file the document.  Accordingly, there is not even a hint of *Strickland* prejudice arising from counsel's oversight.

B.     Failure to object to State's impeachment of Petitioner's alibi testimony.

During trial, Petitioner took the stand in his own defense.  He testified that at the time police stopped him, he was looking for his puppy.  In the course of his search, he encountered a "black guy...walking a dog" and a "kid on a bike down by the Jr. Food Store...."  Doc. 14, Ex. A at 7.  On cross-examination, Petitioner elaborated:  "I...seen a red haired individual, a kid that's about 12 or 15 years old, auburn hair, red maybe, braces...."  *Id*. at 9.  He further stated that when the officers stopped him in the Cove Boulevard area he was still looking for his dog "with [his] heard out of the window looking for him" and was not "hanging out" in the area.  *Id*. at 12.

The prosecutor further asked Petitioner if he had told any officer about his encounters with these two persons, to which Petitioner replied, "They never asked me [but] I believe I may have, yes."  *Id*. at 10-11.  In rebuttal, the State recalled two officers.  The first testified that he followed Petitioner for "approximately three quarters of a mile to a mile" and never "seen his head come out of the window."  *Id*. at 35.  Both testified that Petitioner never mentioned anything "about being with a guy with red hair or with being with a black guy."  *Id*. at 36 & 40. In her closing arguments, the prosecutor reviewed all of this with the jury.  *Id*. at 71.

In this claim, which was presented to the state court, Petitioner faults counsel for failing to object to the prosecutor's questioning of him on this matter and then failing to request a mistrial or a curative instruction regarding the prosecutor's questions to him and her rebuttal witnesses.  The state court's ruling on this issue was not contrary to an unreasonable application of clearly established Supreme Court precedent.  Indeed, this claim is patently frivolous. Petitioner has overlooked the fact that he is the one who brought up these persons in his direct testimony.  He opened the door to this line of questioning, and the prosecutor was absolutely entitled to step through it and question him about these persons on cross-examination, call rebuttal witnesses to counter his testimony, and to comment on the testimony during closing argument.  Mr. Pell's failure to lodge frivolous objection or assert a frivolous ground for mistrial or make a frivolous request for a curative jury instructions is not deficient performance.

      C.      Failure to elicit testimony that the victim could not remember anything about the perpetrator immediately after the robbery.

In a statement given to police approximately four days after the robbery, Donna Cahill advised the investigating detective that she had gone across the street to the drug store after seeing the victim, Betty Lee, standing outside.  According to Ms. Cahill she "asked her immediately if she could remember anything about [the robber] as to what he wore or any description of him at all and she said no she was just too scared to know anything."  Doc. 16, Ex. A at 55.  Petitioner claims that if counsel had pointed out this "highly exculpatory and impeaching excited utterance," there is a reasonable probability that the outcome of the trial would have been different.  Doc. 1 at 15.

This claim was likewise presented to the state court; consequently, the deferential

standard of review applies to it.  Having carefully considered the matter, the Court finds that the

court's decision is neither contrary to nor an unreasonable application of clearly established

Supreme Court law.  During the course of trial, counsel did not attempt to elicit this particular

statement from any witness, but he did  attempt to impeach Ms. Lee's identification of Petitioner

as the robber in other ways.  *See*, *e.g*., Doc. 12 at 76-99; Doc. 13 at 41-44.  Given the numerous

eyewitnesses who were able to identify Petitioner as the person they saw leaving the scene of the

robbery, Ms. Lee's inability to identify him when she was "just too scared to know anything" is

of little consequence.  Ms. Lee was able to identify him later in the day as the robber, and while

there may have been some impeachment value in eliciting this statement, its value was in all

probability outweighed by the prejudice Petitioner would have suffered as a result of the certain

sympathy the jury would have felt for Ms. Lee.[3]  These are precisely the types of matters which

trial counsel must weigh, and the Court does not believe that he acted deficiently in failing to

bring this bit of impeachment to the jury's attention.  Even if he should have elicited this

testimony, given the overwhelming amount of eyewitness evidence against Petitioner, there is

not a reasonable probability that the outcome of the trial would have been different if the jury

had known of Ms. Lee's inability to describe the perpetrator immediately after the robbery.

     D.     Failure to object to testimony regarding alleged intimidation of witness.

     One of the State's witnesses at trial was John Arthur Smith, who had shared a cell with

Petitioner.  When called to the stand, however, Mr. Smith, blaming his alcoholism, could

---

[3]Indeed, Petitioner recognizes as much in crafting his argument on the next issue.  *See*
Doc. 1 at 16 (suggestion that Petitioner attempted to silence a witness and also put victim in fear
of her life was extraordinarily prejudicial).

remember very little about conversations he allegedly had with Petitioner in which Petitioner

confessed to the robbery or with officers to whom he relayed that information.  The State

therefore impeached his testimony with his prior statement and deposition and also asked him

whether he had been threatened:

> Q.    Let me ask you a question, Mr. Smith, do you remember when we were
> just back in the back a few minutes ago, do you remember telling me that
> you had, you have been threatened?
>
> A.    I don't know if it was a threat, I got a message.
>
> Q.    What was that message, sir?
>
> A.    It might have been a mistake.  It said your name is Gettings, you got the
> story backwards.  Something like that.
>
> Q.    Where did you get that threat from?
>
> A.    A guard told me that.
>
> Q.    Where did that little message come from?
>
> A.    A guard told me that last night.
>
> Q.    Do you think that have anything at all to do with your faulty recollection
> today?
>
> A.    No, because I don't fear anybody.

Doc. 13 at 251.

Petitioner claims that the prosecutor admitted that Smith had told her "that two unknown

people had allegedly threatened him not to testify against the Petitioner."  Doc. 1 at 15.  He

further claims that the prosecutor "brought it to the jury's attention that Mr. Smith had threats

made against his life not to testify against the Petitioner, and this came across loud and clear that

if he did he would be severely hurt or maybe even killed."  *Id*. at 15-16.  According to Petitioner,

Smith's testimony in this regard was "highly inflammatory" and "inadmissible."  *Id*. at 16.

This claim was also exhausted in state court, and thus, the deferential standard of review applies.  With that in mind, the Court finds that the state court's decision is neither contrary to nor an unreasonable application of *Strickland*.  Pursuant to Florida law, "Any party, including the party calling the witness, may attack the credibility of a witness...."  Fla. Stat. Ann. § 90.608.  Thus, from an evidentiary standpoint, counsel had no grounds for objecting to the prosecutor's actions, and an objection would have been frivolous and would not have resulted in a mistrial, as Petitioner suggests.  Furthermore, Petitioner has mischaracterized the exchange between the prosecutor and Smith, which, as quoted above, does not mention Petitioner's name or suggest Petitioner's involvement with the alleged threats, and, while the jury was certainly left with the opportunity to infer that Petitioner had threatened Smith, his testimony certainly does not state anything about the number of "'goons'" which were allegedly sent to "shut Mr. Smith up...." Doc. 1 at 16.  Indeed, counsel was able to use Smith's lack of memory to his client's advantage, and thus, there not only was no deficiency in counsel's performance with regard to his handling of this witness' testimony, there also was not prejudice.

E.     Failure to investigate and use finger and palm print evidence.

In this claim, Petitioner argues that counsel was ineffective for failing to investigate the results of fingerprints and palm prints lifted from the crime scene.  Of the latent prints which were of any value, none matched Petitioner's prints.  Doc. 16, Ex. A at 59-63.

This claim was presented to the state court, and therefore, the Court examines the ruling only to determine whether it was contrary to or involved an unreasonable application of clearly established Supreme Court law.  Having considered the matter, the Court finds that it does not.

In light of the eyewitness testimony placing Petitioner at the scene of the robbery, there is not a reasonable probability that the outcome of the proceedings would have been different if counsel had made this lack of evidence an issue, as the lack of evidence does not prove Petitioner was not in the drug store, and the State would have certainly presented that issue to the witnesses and argued it to the jury. Furthermore, even if Petitioner had not testified, the outcome of the trial would have been the same.

      F.      Failure to call named witnesses.

      This claim was presented to the state court for consideration, and the court held an evidentiary hearing as to two of the proposed witnesses, Loiry and Whitman. Having carefully considered the matter, the Court finds that the state court's decision was neither contrary to nor an unreasonable application of *Strickland*. It is clear from Petitioner's testimony at the evidentiary hearing that he was a "hands on" client, who "tried to" "actively participate[ ] in the formation of defense strategy," and that counsel explained to him the downside of his taking the stand in his own defense and the procedural effect of putting any other witnesses on the stand.[4] Doc. 7, Ex. O at 39. Counsel investigated both Loiry and Whitman, and according to him, he and Petitioner "agreed that calling them was not worth waiving first and last." This was a reasonable trial strategy and not subject to second guessing.

      According to Petitioner, the other proposed witnesses--Hargrove, Hobbs, and Jones–were

---

[4]Pursuant to Fla. R. Crim. P. 3.250, a defendant is entitled to make the concluding argument in closing if he offers no witnesses or if he offers no one other than himself as a witness. *Lamar v. State*, 583 So.2d 771, 772 (Fla. Dist. Ct. App. 1991). *See also Freeman v. State*, 846 So.2d 552, 554-55 (Fla. Dist. Ct. App. 2003) (defendant's right to make final closing argument, where no evidence except defendant's own testimony has been introduced, is vested procedural right).

in the drug store "prior to, during, and after the alleged robbery" and would have testified in such a manner as to "negate[ ] whether a crime had actually been committed and suggest[ ] that [Ms. Lee] pocketed the money and yelled that she was robbed, and...negate[ ] Petitioner's alleged guilt even if the jury believed she was robbed."  Doc. 1 at 18-19.  More specifically, they would have testified that they did not see anyone in the drug store other than Ms. Lee and the pharmacist and that they did not see anyone run out of the drug store.  *Id*. at 18.

Any suggestion that there was no robbery would have been ridiculous and done nothing to bolster the agreed-upon mistaken identity defense.  Furthermore, calling these witnesses would have given the closing argument advantage to the State, an advantage that counsel–and Petitioner–were trying to foreclose.  Furthermore, even if the Court accepts Petitioner's representation that these witnesses were available and would have testified as he has indicated, the Court cannot discern how their testimony that they did not see anything or anyone inside the drug store would have changed the outcome of the trial, especially when there were other witnesses outside the pharmacy who unequivocally testified that they saw someone running from the store.

G.    Failure to object to prosecutorial comments and law enforcement testimony regarding the unreliability of certain witnesses.

In this claim, Petitioner charges that counsel should have objected to and moved for a mistrial based on statements made by the prosecutor and testimony given by law enforcement officers regarding the unreliability of eyewitnesses when describing vehicles and their tag numbers.  These statements and testimony were offered to explain how officers pinpointed Petitioner for the traffic stop, but, in Petitioner's view, they unfairly corrupted the proceedings

by impeaching the credibility of Mona Hood, who unequivocally stated that Petitioner's car was not the same car she saw leaving the scene of the robbery.

This claim was presented to the state court, and its decision is neither contrary to nor an unreasonable application of *Strickland*. There was absolutely nothing improper about the State eliciting testimony from law enforcement to establish how it determined that Petitioner's car should be stopped. These are matters which are part and parcel of good detective work, and their experience and training in conducting criminal investigations are more than sufficient to make them competent to testify to such matters. Furthermore, the State was perfectly within its rights to impeach Ms. Hood's testimony in any manner it saw fit, since she was potentially Petitioner's best witness. In short, Mr. Pell had no basis for an objection or a mistrial, and thus, his performance was not deficient in this regard.

H.     Failure to request mistaken identity instruction.

After closing arguments, the court instructed the jury that to "overcome the Defendant's presumption of innocence," the State had to prove that "Defendant is the person who committed the crime." Doc. 14, Ex. A at 87. It also instructed the jury that in assessing the reliability of the witnesses, it should consider whether the witness had "an opportunity to see and hear the things about which the witness testified," whether the witness had "an accurate memory," and whether the witness "at some other time ma[d]e a statement inconsistent with the testimony he or she gave in court." *Id*. at 88-89. According to Petitioner, the jury should have been further instructed to consider the following additional factors: (1) whether there was "any discrepancy between any pretrial lineup description," (2) whether there was "[a]ny identification by picture of the Petitioner prior to the lineup," (3) whether there was a "[f]ailure to identify the Petitioner

on a prior occasion," (4) whether there was "[a]ny lapse between the alleged act and

identification," and (5) "any other facts raised by the totality of the circumstances that bear upon

the likelihood that the witness's in-court identification is not credible or reliable."  Doc. 1 at 22.

This issue was raised with the state court, and its decision is neither contrary to nor an

unreasonable application of *Strickland*.  While the instructions given by the court are not as

specific as those suggested by Petitioner, they adequately cover all of Petitioner's concerns, and

thus, there was no need for counsel to seek a more detailed instruction.  Indeed, the Florida

Supreme Court has found that when the given instructions clearly place the burden upon the

State to prove beyond a reasonable doubt all of the elements of the crime, including the identity

of the defendant as the perpetrator of the crime, there is no error and no further identity

instruction is required.  *State v. Freeman*, 380 So.2d 1288, 1289 (Fla. 1980).[5]  Consequently,

counsel did not act deficiently in not requesting a separate identification instruction.

I.      Failure to object to prosecutor's references to Petitioner being in a drug
        neighborhood.

This issue was exhausted in state court, and the court's decision is therefore entitled to

deference unless it was contrary to or an unreasonable application of clearly established Supreme

Court law.  It was not.  Petitioner's argument is based on a premise which is not supported by the

record, i.e., at no point did the prosecutor refer to Cove Boulevard as a "drug and prostitution

---

[5]While the Eleventh Circuit has approved a more detailed identification instruction, it too
recognizes that if the other given instructions adequately cover the issue, a separate identification
instruction is not required.  *See, e.g.*, Special Instructions 3,  *Eleventh Circuit Pattern Jury
Instructions–Criminal* (2003); *United States v. Martinez*, 763 F.2d 1297, 1304 (11th Cir. 1985).

infested/high crime area...."  Doc. 1 at 23.  Simply referring to the geographical area in which Petitioner was observed driving did not "inject[ ] a strong motive for the Petitioner to have committed this crime" or tell "the jury in no uncertain terms that he committed it to supply his drug habit."  *Id*. at 24.  That is pure supposition on Petitioner's part, and counsel's failure to object to the Cove Boulevard reference was not deficient.

II.     Failure of trial court to conduct new sentencing hearing and of appellate court to enforce its order.

In this claim, Petitioner argues that his due process rights were violated when the trial court failed to conduct a new sentencing hearing following remand in *Schmidt* and when the appellate court then refused to enforce its own mandate.  This claim was considered in state court and rejected, and the Court must determine whether this ruling is contrary to or an unreasonable application of clearly established Supreme Court law.

There is no dispute that counsel must be afforded to an indigent defendant at every stage of a criminal proceeding where his substantial rights may be affected.  *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  Thus, for example, when a defendant is sentenced following the revocation of his probation, due process requires that he be afforded counsel to represent him in that proceeding and that he be given the opportunity to allocute.  *Id*.  Both the Fifth and Eleventh Circuits have extended this ruling to situations where the defendant is resentenced following the vacation of the original sentence if the resentencing constitutes a new sentence.  *United States v. Taylor*, 11 F.3d 149 (11th Cir. 1994); *Paul v. United States*, 734 F.2d 1064 (5th Cir. 1984); *Johnson v. United States*, 619 F.2d 366 (5th Cir. 1980).  The Supreme Court has not, however, explicitly made that extension, and thus, the state court's decision denying Petitioner a

resentencing hearing cannot be contrary to or an unreasonable application of clearly established federal law. *Carey*, 127 S.Ct. at 654.[6]

III.     Failure of resentencing counsel to argue that Petitioner did not qualify for habitualization.

In this claim, Petitioner charges that resentencing counsel, Walter Smith, failed to "introduce...evidence as to the true nature and extent of [his] prior convictions to prove that he did not qualify to be classified as an habitual felony offender--because these prior convictions analogized to misdemeanors...."  This claim was presented to the state court and rejected, and its decision is neither contrary to nor an unreasonable application of *Strickland*.  The documents related to Petitioner's prior convictions were in fact presented to the state court for its consideration at the first 3.800 hearing.  Thus, even if counsel did not later re-present those same documents to the court, there was no prejudice as the court had already considered and rejected them.

---

[6]The Court notes, however, that Petitioner, with stand-by counsel, was afforded an extensive opportunity to argue against the imposition of the habitual offender sentence before the vacation of his sentence, a result which appears to have occurred only because the appellate court did not consider the documents generated in the 3.800 proceeding in reaching its decision.

## CONCLUSION

Having carefully considered the matter, the Court respectfully **RECOMMENDS** that the

petition for writ of habeas corpus, Document 1, be **DENIED**, and this cause be **DISMISSED**

**WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this _27ᵗʰ_ day of June, 2007.


## *s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**